UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN T. THOMAS | CIVIL ACTION |
| VERSUS | NO. 14-2814 |
| TANGIPAHOA PARISH SCHOOL BOARD ET AL. | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

## ORDER AND REASONS ON MOTION

This is an employment discrimination action in which plaintiff claims he was wrongfully terminated based upon his race. Defendants allege that plaintiff was fired for legitimate non-discriminatory reasons after an internal investigation conducted in substantial part by a now-retired employee.

Plaintiff's Motion in Limine Seeking Adverse Presumption Based on Spoliation or, Alternatively Motion for Sanction of Adverse Presumption Based on Spoliation, Record Doc. No. 28, is now pending before me. Written opposition and several supplemental submissions have been filed. Record Doc. Nos. 39, 41, 42, 45. Oral argument was conducted on June 29, 2016. For the following reasons, the motion is DENIED.

Defendants have been unable to locate a file that was created by defendant's now-retired former employee, Lionel Jackson, during his investigation of allegations of illegal recruiting against plaintiff, Kevin Thomas, an African-American and a former assistant football coach at Loranger High School. Plaintiff's Request for Production No. 12 clearly seeks production of the file materials. The defendant Tangipahoa Parish School Board's written response to plaintiff's Request for Production No. 12 identified responsive materials

it was producing and stated that it was "unaware of any additional documents responsive to this request but reserves the right to supplement this response as information may become available."  Record Doc. No. 28-6 at p. 6.  Based on the loss of the file, plaintiff asks the court to instruct the jury, adversely to defendants' litigation position, that the file would have revealed that he did <u>not</u> participate in any illegal recruiting activities and that <u>Cecil</u> Thomas, a white coach at Hammond High School during the same time period, did engage in illegal recruiting.

The court's imposition of the adverse presumption based on spoliation of evidence is a severe sanction.  Therefore, the showing required of the party seeking the sanction is exacting.

> Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence.  We permit an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of "<u>bad faith</u>" or "<u>bad conduct</u>."  A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant.  Bad faith, in the context of spoliation, generally means <u>destruction for the purpose of hiding adverse evidence</u>.

<u>Guzman v. Jones</u>, 804 F.3d 707, 713 (5th Cir. 2015) (quotation and citations omitted) (emphasis added).

Thus, the party seeking the sanction must establish that "'(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a <u>culpable state of mind</u>; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that

it would support that claim or defense.'" Thermotek, Inc. v. Orthoflex, Inc., No. 3:11-CV-870-D BF, 2015 WL 4138722, at *12 (N.D. Tex. July 7, 2015) (quoting Rimkus Consulting Grp., Inc. v. Cammarata, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010) (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001))) (emphasis added); accord United States v. Garcia, 596 F. App'x 24, 26 (2d Cir. 2015), cert. denied, 136 S. Ct. 1532 (2016); Vailes v. Rapides Par. Sch. Bd., No. 15-429, 2016 WL 744559, at *6 (W.D. La. Feb. 22, 2016).

In the instant case, the lost file is certainly relevant to plaintiff's claims. Defendants arguably had an obligation to preserve the file no later than the date they received plaintiff's EEOC charge, which was less than two months after plaintiff's employment contract was not renewed. However, Thomas has failed to sustain his exacting burden required to obtain this severe sanction because he has "produced no evidence suggesting bad faith." Guzman, 804 F.3d at 713.

The Fifth Circuit has not further defined "bad faith" in the spoliation context, but has defined it under Louisiana law as

> [t]he opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead and deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.

Industrias Magromer Cueros y Pieles S.A. v. Louisiana, 293 F.3d 912, 922 (5th Cir. 2002) (emphasis added); compare Black's Law Dictionary BAD FAITH (10th ed. 2014)

("dishonesty of belief, purpose, or motive") with id. GOOD FAITH ("A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, . . . or (4) absence of intent to defraud or to seek unconscionable advantage."). As these definitions emphasize, the evidence must show that a party had a dishonest, deceptive or culpable state of mind for the court to find that the party acted in bad faith.

It is well established in the Fifth Circuit that "'[m]ere negligence is not enough [to impose an adverse presumption based on spoliation], for it does not sustain an inference of consciousness of a weak case.'" Moss v. Alcorn Cnty., No. 1:13-CV-00167-SA-DAS, 2015 WL 419655, at *4 (N.D. Miss. Feb. 2, 2015) (quoting Vick v. Tex. Emp't Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)) (emphasis added); accord Thermotek, Inc., 2015 WL 4138722, at *12.

In the instant case, Rhea Marrs, the principal of Loranger High School wrote to the Louisiana High School Athletic Association ("LHSAA") on June 2, 2014, requesting an investigation into allegations of illegal recruiting at Loranger High. Defendants decided not to renew plaintiff's contract on July 1, 2014. Thomas filed a discrimination complaint with the EEOC on August 29, 2014.

The competent evidence indicates that, when defendants received the EEOC charge, the School Board's Human Resources Director, Ronald Genco, and Assistant Superintendent, Thomas Bellavia, asked Jackson to provide them with all information that he had maintained during his investigation of illegal recruiting allegations against Thomas. Jackson produced some emails, but nothing else. Record Doc. No. 34-6, declarations under

penalty of perjury of Genco and Bellavia. Both Genco and Bellavia aver that they searched Jackson's office thoroughly at that time and again after Jackson retired, but they found no notes, folders or files involving Thomas.

Jackson testified in his deposition that he began keeping notes about the allegations he was receiving against Thomas before he and Marrs met formally with plaintiff on April 8, 2014, and that he continued to keep notes of additional allegations in the same folder after that. Record Doc. No. 34-2 at pp. 8-10 (Jackson's deposition transcript at pp. 28, 31-33). Jackson stated that he thought he left the file in his office when he retired or "it may have been mixed up in some things that I had [at home], but it's not." Id. at p. 6 (deposition transcript at p. 18). The LHSAA sent a report of its investigative conclusions to Marrs on August 7, 2014. Record Doc. No. 34-8.

"While the timing of [defendants' failure to find the file] may seem strange, there is no evidence to suggest that [Jackson or any defendant] acted in a manner intended to deceive [plaintiff] or that he undertook [any action] with the intent of destroying or altering evidence." Guzman, 804 F.3d at 713 (emphasis added). At most, the current record indicates that Jackson and/or defendants may have been negligent or incompetent in failing to preserve Jackson's file. Any inconsistencies between Jackson's testimony and the notes of the LHSAA investigator, or the lack of documentation of illegal recruiting allegations in plaintiff's personnel file, do not compel the court's imposition of the adverse presumption that defendants had an improper motive to conceal Jackson's file. Instead, they simply raise questions of credibility for the jury to resolve, including, for example,

whether the reasons proffered by defendants for plaintiff's termination were pretextual. Certainly, these inconsistencies and the testimony concerning the circumstances surrounding the missing file may be presented for the jury's consideration at trial. On the current record, however, the court cannot conclude that the file was intentionally destroyed for the purpose of hiding adverse evidence. Accordingly, plaintiff's motion is denied.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE